# Third District Court of Appeal

## State of Florida

Opinion filed February 10, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-445
Lower Tribunal No. 10-28253C
_____

**Gregory Campbell,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Bronwyn C. Miller, Judge.

Carlos J. Martinez, Public Defender, and Brian L. Ellison and Natasha Baker-Bradley, Assistant Public Defenders, for appellant.

Pamela Jo Bondi, Attorney General, and Michael W. Mervine, Assistant Attorney General, for appellee.

Before WELLS, ROTHENBERG and EMAS, JJ.

WELLS, Judge.

Appellant, Gregory Campbell, was charged with grand theft of over $100,000 (Count 7); Medicaid fraud for making a false claim of over $50,000 (Count 8); Medicaid fraud/conspiracy for making a false claim (Count 9); organized scheme to defraud over $50,000 (Count 10); and organized scheme to defraud more than $20,000 but less than $50,000 (Count 11).[1]  The allegations against Campbell stemmed from an IRS audit that revealed that three assisted living facilities (ALFs) had charged Medicaid for the care of the same in-patient residents. The proprietors of two of the three ALFs entered plea agreements and subsequently testified at trial that they had employed Campbell to process their online billing and that he had participated in a fraudulent scheme.  The defense disputed throughout the trial that the evidence linked Campbell to the fraud.

Shortly after deliberations began, the jury asked:

Is it correct that Gregory Campbell endorsed numerous checks totaling $118,000 as per the analysis dated for Sunnyman Retirement Home, 7/22/2011?

The State and Campbell agreed to the following response:

Please rely upon your recollection of the testimony and the significance of each exhibit in the context of that.

Not long afterwards, the trial court advised the parties that contrary to its instruction to the jury that inquiries were to be made through the jury foreperson, one of the jurors had sent a note to the court.  That note stated:

[1] The remaining counts addressed Campbell's co-defendant's alleged wrongdoing.

Judge, I cannot agree to one of these charges. I am sorry I'm not going to be able to convict someone when I don't agree.

Noting that the jury had been deliberating for only two hours after a four-day trial, the court below refused to give an Allen[2] charge and advised the parties that it would instruct the jury that it should continue to deliberate and to advise the court when it had reached a verdict. Counsel for both parties agreed to this instruction:

> [BY THE COURT:] So, I'm happy to hear from all of you, but I'm not Allen charging them. No. They've only been out for two hours; it's not going to happen. So I am going to, of course, send a note back in indicating that they should continue to deliberate.
>
> MR. GREGG [defense counsel]: That's fine—
>
> THE COURT: I'm not Allen charging them, it's too early, they have barely been deliberating.
>
> . . . .
> They've been deliberating two hours. Please. This [juror who sent the note] is the one whose family is in town. Okay.
>
> I am also going to readvise them that the note should be signed by the foreperson.

---

[2] The Allen charge has its genesis in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and is given when a jury indicates that it is having problems reaching a verdict. See Roma v. State, 785 So. 2d 1269, 1271 (Fla. 5th DCA 2001) ("An Allen charge is a supplemental instruction generally given when it appears the jury is having difficulty reaching a verdict. Dixon v. State, 603 So. 2d 86 (Fla. 5th DCA 1992); Gahley v. State, 567 So. 2d 456 (Fla. 1st DCA 1990), rev. denied, 577 So. 2d 1326 (Fla.1991)."); Warren v. State, 498 So. 2d 472, 475 (Fla. 3d DCA 1986) ("[An Allen] charge is derived from the case of Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and is designed to bring a deadlocked jury together, if possible, so that a unanimous verdict may be rendered without any juror giving up his or her conscientious convictions.").

MR. GREGG [defense counsel]: That's fine.

THE COURT: The only disadvantage of taking away cell phones is that jurors sometimes don't want to deliberate as long.

Okay. This is what I propose, and, of course, I am open to suggestion: Please continue to deliberate and advise us when you have arrived at a verdict. Please try to follow my prior instructions regarding communication with the Court, i.e., signed by the foreperson; Judge Miller.

. . . .

Any objection to the proposed response?

MS. SIMMONS [for the State]: No, Your Honor.

MR. GREGG: No, Your Honor.

The jury was given the agreed-upon instruction and the court was recessed.

Shortly thereafter, the court was advised that a verdict had been reached. The jury returned to the courtroom and the verdict was read finding Campbell guilty as charged on count 7 (grand theft over $100,000); count 8 (Medicaid fraud for filing a false claim of over $50,000); count 9 (filing a false Medicaid claim); and count 10 (organized fraud over $50,000). He was found not guilty on count 11 (organized scheme to defraud more than $20,000 but less than $50,000). However, when the jurors were polled, Juror Cantisani (the juror who authored the note indicating an inability to agree on one count) replied "[n]ot really" when asked if this was her verdict. Upon hearing this, the trial court stopped the polling process,

stating only that a verdict had not been reached and then sent the jury out to continue to deliberate:

> THE DEPUTY CLERK: Ladies and gentlemen of the jury, you have heard me read the verdict. As I call your name, if this is your verdict, answer "yes"; if this is not your verdict, answer "no".
>
> . . . .
>
> Roxanna Cantisani?
>
> MS. CANTISANI: Not really.
>
> THE COURT: Okay. Well, we need you to go back in and deliberate. You haven't reached a verdict.

Campbell's counsel for a second time requested, and was denied, an Allen charge.

At 3:45 p.m.—two hours and forty minutes after deliberations had begun— the court received a second note from a juror. While not signed, it appeared to the court and to counsel that the note was written by the same juror, Juror Cantisani. This note stated that the juror did not want to continue to deliberate and would not agree to a verdict:

> THE COURT: Okay. We have a note from a juror, it's unsigned. And it says: I have a few question [sic] in redarges (sic) to my duty – redarges – R-E-D-A-R-G-E-S. I don't have to continue with this. I cannot and will not give my vertic (sic); V-E-R-T-I-C.

For a third time, the trial court refused to give an Allen charge opting instead to instruct the jury only to "continue deliberating."

5

At 4:53 p.m., the jury announced that it had reached a verdict. The jury again found Campbell guilty on counts 7, 8, 9 and 10 but not on count 11 of the information. This time, when polled, each juror, including Juror Cantisani, confirmed that this was his or her verdict. At 5:17 p.m., court recessed.[3]

Campbell's subsequent motion for a new trial or for judgment notwithstanding the verdict was denied. Campbell was sentenced to seven years in prison followed by eight years' probation. He also was ordered to pay restitution in the amount of $460,893.58.

Here, Campbell advances two alternative reasons for reversal: either a) all three of the judge's communications to the jury were modified Allen charges, which mandated reversal under a line of cases including Almeida v. State, 157 So. 3d 412, 416 (Fla. 4th DCA), review denied, 177 So. 3d 1271 (Fla. 2015); Washington v. State, 758 So. 2d 1148, 1154 (Fla. 4th DCA 2000) and Tomlinson v. State, 584 So. 2d 43 (Fla. 4th DCA 1991), which conclude it is per se reversible error to give an Allen charge more than once; or alternatively, b) the trial court erred in failing to give a complete Allen charge after Juror Cantisani, for a second time, sent a note stating she could not continue with deliberations.

---

[3] After the jury left the court, the defense requested that Cantisani be recalled and re-polled to determine whether she had been pressured by other jurors. The request was denied.

Because we agree with the latter point, we do not address Campbell's arguments that each of the instructions given below was an <u>Allen</u> charge and that it is per se error to give more than one <u>Allen</u> charge. Rather, we conclude that considering the totality of the unique circumstances in this case, the trial court reversibly erred when it failed to give the standard <u>Allen</u> charge (Fla. Std. Jury Inst. (Crim.) 4.1) [4] after Juror Cantisani sent her second note advising that she

---

[4] That instruction reads:

### Jury Deadlock

I know that all of you have worked hard to try to find a verdict in this case. It apparently has been impossible for you so far. Sometimes an early vote before discussion can make it hard to reach an agreement about the case later. The vote, not the discussion, might make it hard to see all sides of the case.

We are all aware that it is legally permissible for a jury to disagree. There are two things a jury can lawfully do: agree on a verdict or disagree on what the facts of the case may truly be.

There is nothing to disagree about on the law. The law is as I told you. If you have any disagreements about the law, I should clear them for you now. That should be my problem, not yours.
If you disagree over what you believe the evidence showed, then only you can resolve that conflict, if it is to be resolved.

I have only one request of you. By law, I cannot demand this of you, but I want you to go back into the jury room. Then, taking turns, tell each of the other jurors about any weaknesses of your own position. You should not interrupt each other or comment on each other's views until each of you has had a chance to talk. After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried, and will discharge you with my sincere appreciation for your services.

could not reach a verdict. By then, this juror had already sent a note to the court indicating that she could not agree on at least one count, and had later renounced her verdict when polled in open court in the presence of the trial judge, the parties' attorneys, and all of the other jurors. Thus, when this same juror for a second time advised the court that she could not and would not continue to deliberate or reach a verdict, the court below had to do more than simply instruct the jury to "continue to deliberate." And, by giving this limited instruction, the trial court likely led this juror to conclude that she was required to continue deliberating in order to achieve a unanimous verdict, even if it meant abandoning her conscientious beliefs. This conclusion is supported by the second (and the final) verdict, reached shortly after this last instruction was given, which was identical in all respects to the first verdict which had previously been renounced by this juror. Upon the return of this second verdict, the trial court again polled the individual jurors and Juror Cantisani this time acceded in the verdict.

Under these circumstances, we agree that when this juror sent her second note indicating both an unwillingness to continue and an inability to reach a verdict (having already renounced an earlier verdict reached during deliberations) that an <u>Allen charge should have been given and that anything less was impermissibly</u>

You may now retire to continue with your deliberations.

Fla. Std. Jury Instr. (Crim.) 4.1.

coercive.  See <u>Thomas</u>, 748 So. 2d at 976 (stating that "the applicable standard of review is whether, under the totality of the circumstances, the trial judge's actions were coercive. <u>United States v. Brokemond</u>, 959 F.2d 206, 208 (11th Cir. 1992).").

Reversed and remanded.