# Third District Court of Appeal

## State of Florida

Opinion filed May 18, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1875
Lower Tribunal No. F16-21436
_____

**Douglas Blackman,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Alan S. Fine, Judge.

The Law Offices of Grey and Mourin, P.A., and Jason Grey and Lana Cucchiella, for appellant.

Ashley Moody, Attorney General, and Sonia Perez, Assistant Attorney General, for appellee.

Before LINDSEY, HENDON, and BOKOR, JJ.

LINDSEY, J.

Appellant Douglas Blackman (Defendant below) appeals from a conviction and sentence for second-degree murder while in possession of a

firearm.  Blackman raises four main issues on appeal, but we write solely to address the alleged errors related to what is commonly referred to as an Allen charge.[1]  Based on the totality of the circumstances, we agree with the trial court that no Allen charge was necessary because the jury did not express deadlock.  We therefore affirm.[2]

## I.    BACKGROUND

Blackman was charged and tried for the second-degree murder of Jerrod Rolle.  The trial commenced on Wednesday, June 27, 2018, and ended on Friday, June 29, 2018.  Jury deliberations began on Friday afternoon at 2:52 p.m.  Shortly after 5:00 p.m., the jury asked to rehear testimony from one of the witnesses.  As the audio recording was being queued, the jury sent a note that read: "if we have not made a decision, we will leave by 7:30."  The audio recording was then played for the jury, and the jurors resumed deliberations at around 6:00 p.m.  At 6:47 p.m., the jury returned a unanimous guilty verdict of second-degree murder.

---

[1] Florida's standard Allen charge is a "carefully crafted . . . instruction that allows a jury to continue deliberations after it has announced its inability to do so, where there is a reasonable basis to believe a verdict is possible, while cautioning jurors that they should not abandon their views just to get a verdict or to accommodate the majority."  Thomas v. State, 748 So. 2d 970, 977 (Fla. 1999); see also Fla. Std. Jury Instr. (Crim.) 4.1.

[2] We affirm, without further discussion, the other issues raised on appeal.

The Defense asked the jury to be polled.  The first five jurors assented to the verdict, but Juror Dowell became distressed and began to cry when she was asked if she agreed:

> CLERK: [Juror] Dowell
>
> DUROR DOWELL: Umm–
>
> THE COURT: Ms. Dowell, I can appreciate the depth of emotion. I don't want to make any presumptions about what it means. Are you able to answer the question with either a yes or no?
>
> JUROR FLACK: She doesn't feel like she can answer.

At sidebar, defense counsel informed the court that Juror Flack had her arm around Juror Dowell and was whispering to her.  The court responded: "[f]air enough. She's making comments; she has her arm around her, for the record, and she's comforting her."  The following exchange then took place between the court and Juror Flack:

> THE COURT: So, Ms. Flack? I understand and have no problem with the fact that you're comforting Ms. Dowell. On the other hand, we don't know what you're saying to her. It could be a lot of different things at this point.
>
> JUROR FLACK: I wasn't saying anything.
>
> THE COURT: Okay. I couldn't be sure if you were saying anything because the back of your head was to me—
>
> JUROR FLACK: Right, right.

3

THE COURT: —and you were looking toward her face. Okay.

JUROR FLACK: She feels she can't answer.

The court then told Juror Dowell: "we're kind of at an impasse. I need a yes or — if it's your verdict or it's not your verdict." Juror Dowell responded: "[i]t's not my verdict."

The jurors were sent back to the jury room, and the court discussed with the parties how best to proceed. The State asked the court to instruct the jury to continue deliberations. The Defense argued the jury could not continue deliberations because the jury form had been signed, and moved for a mistrial arguing it was coercive for Juror Dowell to go back into the jury room in the state she was in. In response, the State argued that Juror Dowell never said anything about feeling coerced or pressured and that "[t]his is rampant speculation." The court ultimately denied the motion for mistrial.

The court called the jury back and provided the following instruction:

> So, ladies and gentlemen, included in the jury instructions that I read to you, and that were sent back with you is the requirement that the[] jury be unanimous. I am going to give you a further opportunity to either become unanimous or declare that you cannot reach a unanimous verdict.

4

After the court instructed the jury to continue deliberating, the Defense again moved for mistrial "because it's coercive to send Ms. Dowell back to the jury room." The court denied the motion, explaining its ruling as follows:

> It is not clear to me that what happened with Ms. Dowell was coercive. I see no specific evidence of that. It could very well be that she simply does not want to be responsible for such a significant verdict. There has been no interaction between the jury, other than -- Ms. Flack had her arm around her to comfort her when she indicated distress and didn't answer the Court's inquiry.

The jury resumed deliberations at 7:05 p.m. Minutes later, at 7:09 p.m., the jury sent the following note: "We cannot reach a unanimous verdict today." The Defense again moved for mistrial, arguing that "based on the representations by Ms. Dowell, who -- I believe the record's clear that would not be her verdict -- that is not her verdict, Judge, that defense would argue that the Court hangs the jury. That should be a mistrial." The State responded as follows: "the note speaks for itself. They're done for the day; they didn't say they were done. They can come back Monday."

When the court suggested the possibility of an <u>Allen</u> charge, the Defense objected: "Judge, defense is not requesting an Allen charge. Defense believes that an Allen charge would further coerce Ms. Dowell." The jury was called back into the courtroom and was given the following instruction:

5

I've received your note, and I understand, and that's fine. We will then let you go for the weekend. . . . But since we're not finished with the case, you need to come back Monday morning at 9 o'clock.

After this instruction, Juror Flack addressed the court:

> JUROR FLACK: If it makes me physically sick to come back on Monday, do I have to come back on Monday? It's very, very -- This was extremely stressful, and I am definitely not feeling well. Definitely not feeling well. I'm not even comfortable with everyone here.
>
> THE COURT: Let's -- let me respond to you by saying --
>
> JUROR FLACK: I actually feel sick.
>
> THE COURT: -- that I hope you feel better soon. I do understand that a decision of this magnitude can make one anxious. I do need you to come to the courthouse, and if you're feeling so badly that you cannot deliberate, that's something I need to put on the record at that time. I can't have you not show up. Okay? Thank you.

The Defense moved for mistrial based on Juror Flack's comments, and the court denied the motion.

The jury reconvened on Monday morning. Although the Defense had asked the court *not* to give an Allen charge on Friday, the Defense requested a formal Allen charge before deliberations on Monday:

> [DEFENSE]: The defense believes that Your Honor gave a modified Allen charge on Friday . . . . The defense would ask that you formally Allen charge them at this point, being that Ms. Dowel[l] is -- was

6

visibly upset, being that Ms. Flack then spoke up -- Ms. Flack then spoke up after they were called back and said she's physically sick.

THE COURT: Alright. So, you want me to give the full Allen charge?

[DEFENSE]: Yes, Judge.

THE COURT: Does State agree?

. . . .

[STATE]: At this juncture, Judge, the jury hasn't said they are dead locked. In fact, they said they were unanimous. Obviously, based on the display in court we know they are not -- at least publicly unanimous. So, I would ask for them to deliberate and let us know that they are --

THE COURT: So, that's a no?

[STATE]: That would be a no, Judge.

THE COURT: Okay.

The court denied the Defense's request for a formal Allen charge and the Defense's subsequent motion for a mistrial.

The jury resumed deliberations shortly after 10:30 a.m. At 10:40 a.m., the court received a note from Juror Dowell that read: "I truly think defendant should have a lesser sentence due to the lack of evidence, no weapon, no fingerprints, just a reliable witness." The Defense again moved for mistrial and for an Allen charge, arguing "[i]f that is not an indication . . . they cannot reach a unanimous verdict, I'm not sure what is, Judge."

7

The court denied the Defense's motion and request for an <u>Allen</u> charge, explaining, "[t]his is not a question of whether he's guilty or not. She is indicating she thinks he should get a lesser sentence, not that he's not guilty. . . . I think it calls for a response." The court then called the jury back to the courtroom and addressed Juror Dowell's note:

> THE COURT: . . . So, Ms. Dowel[l] wrote a note that says, "I truly think the defendant should have a lesser sentence due to the lack of evidence, no weapon, no fingerprints, just a reliable witness." Let me turn it over to the clerk for court exhibit.
>
> So, my response is as I previously instructed you, and it's in the written final instructions, the sentencing phase of the trial is exclusively for the Court. And that's outside the province of the jury. It's one of those things that the jury makes one decision or multiple decisions but none of them are the sentencing decision. I have read your note, I understand your note and I will be considering your note depending on what happens, okay? Thank you very much. Please resume your deliberations.

Deliberations resumed at 10:52 a.m. At 11:00 a.m., the jury returned with a guilty verdict of second-degree murder with actual possession of a firearm. The jury was again polled, and all jurors assented to the verdict.[3]

Following the verdict, the Defense moved for a new trial arguing that (1) the trial court abused its discretion by sending a visibly distraught

---

[3] In its written order denying the Defense's motion for new trial, the court noted that "when the jury was polled following their final verdict, Juror Dowell calmly and confidently confirmed that she agreed with the verdict . . . ."

dissenting juror back to deliberate and (2) pursuant to <u>Campbell v. State</u>, 186 So. 3d 577 (Fla. 3d DCA 2016), the court was required to give an <u>Allen</u> charge when Juror Dowell indicated for the second time that she was uncomfortable rendering a verdict.

The trial court denied the motion for new trial in a detailed, written order, explaining its decision, in part, as follows:

> A juror did dissent in the jury deliberation process, but dissent does not constitute deadlock. At no time was there a reason to believe the jury was deadlocked. In fact, the various notes from the jurors show a jury studying the evidence and conscientiously trying to reach a verdict. At no point in the deliberation process did the jury foreman or any individual juror announce that they were unable to come to a unanimous decision. There were indications of frustration and discomfort. Nevertheless, such feelings often arise when making substantial group decisions, and they are not indicative of a deadlocked jury deliberation process. An <u>Allen</u> charge is only appropriate when the jury indicates deadlock.

The court also distinguished <u>Campbell</u>, a case in which this Court held that the trial court reversibly erred when it failed to give the standard <u>Allen</u> charge after a juror sent two notes advising the court of her unwillingness to continue deliberations and her inability to reach a verdict: "The case currently before the Court is different from <u>Campbell</u> because the dissenting juror here never indicated an inability to reach a verdict."

Following entry of the final judgment, Blackman timely appealed.

9

## II.    ANALYSIS

In <u>Allen v. United States</u>, 164 U.S. 492, 501 (1896), the United States Supreme Court held that it is not error for a trial court to urge the jury to reach a verdict when the jury has returned without reaching a unanimous decision. Consequently, this type of instruction has come to be known as an <u>Allen</u> charge. Florida courts have long recognized that "a trial court should not couch an instruction to a jury or otherwise act in any way that would appear to coerce any juror to reach a hasty decision or to abandon a conscientious belief in order to achieve a unanimous position." <u>Thomas v. State</u>, 748 So. 2d 970, 976 (Fla. 1999).

To strike the proper balance between urging a deadlocked jury to reach a unanimous decision and avoiding an atmosphere of coercion, Florida's standard <u>Allen</u> instruction provides as follows:

### 4.1 JURY DEADLOCK

I know that all of you have worked hard to try to find a verdict in this case. It apparently has been impossible for you so far. Sometimes an early vote before discussion can make it hard to reach an agreement about the case later. The vote, not the discussion, might make it hard to see all sides of the case.

We are all aware that it is legally permissible for a jury to disagree. There are two things a jury can lawfully do: agree on a verdict or disagree on what the facts of the case may truly be.

10

There is nothing to disagree about on the law. The law is as I told you. If you have any disagreements about the law, I should clear them up for you now. That should be my problem, not yours.

If you disagree over what you believe the evidence showed, then only you can resolve that conflict, if it is to be resolved.

I have only one request of you. By law, I cannot demand this of you, but I want you to go back into the jury room. Then, taking turns, tell each of the other jurors about any weakness of your own position. You should not interrupt each other or comment on each other's views until each of you has had a chance to talk. After you have done that, if you simply cannot reach a verdict, then return to the courtroom and I will declare this case mistried, and will discharge you with my sincere appreciation for your services.

You may now retire to continue with your deliberations.

Fla. Std. Jury Instr. (Crim.) 4.1.; see also Thomas, 748 So. 2d at 977.

In short, an Allen charge "is designed to bring a deadlocked jury together, if possible, so that a unanimous verdict may be rendered without any juror giving up his or her conscientious convictions." Warren v. State, 498 So. 2d 472, 475 (Fla. 3d DCA 1986).

Importantly, because an Allen charge is itself coercive, it can be error to give the instruction prematurely. See Moore v. State, 635 So. 2d 998, 999 (Fla. 4th DCA 1994) ("We agree with appellant that the trial court erred in giving a deadlock charge to the jury, over appellant's objection, on the same

11

Friday afternoon that the jury began deliberations, and at a time when there was no indication that the jury was deadlocked."); Armstrong v. State, 364 So. 2d 1238, 1238 (Fla. 1st DCA 1977) (holding that giving the Allen charge was error "when the jury, after having retired to consider the verdict, returned to the courtroom with a question and, without indication from the jury that they were deadlocked"); Kozakoff v. State, 323 So. 2d 28, 30 (Fla. 4th DCA 1975) ("[A]n Allen charge (sometimes referred to as a 'dynamite' charge) to the jury . . . before the jury indicated that they might not be able to reach a decision and . . . demanding that the jury reach a verdict . . . prejudiced appellant's right to a hung jury.").

Blackman argues the trial court erred with respect to delivery of an Allen charge during four stages of jury deliberations: (1) When Juror Dowell disagreed with the verdict during polling; (2) when the jury sent a note stating it could not reach a unanimous verdict "today"; (3) when Juror Flack asked to be excused from returning to deliberate on Monday; and (4) when Juror Dowell sent a note stating that Blackman should have a lesser sentence.

We review these alleged errors under the totality of the circumstances to determine whether the trial court's actions were coercive. See Thomas, 748 So. 2d at 976 ("[T]he applicable standard of review is whether, under the totality of the circumstances, the trial judge's actions were coercive."); Baptiste v. State, 306 So. 3d 306, 308 (Fla. 3d DCA 2020), approved, 324

12

So. 3d 453 (Fla. 2021) ("A trial court commits error when it couches an instruction to a jury or otherwise acts in any way that would appear to coerce any juror to reach a hasty decision or to abandon a conscientious belief in order to achieve a unanimous position." (quoting Nottage v. State, 15 So. 3d 46, 48 (Fla. 3d DCA 2009))). We review the trial court's rulings on Blackman's various motions for mistrial under the abuse of discretion standard. See Tejeda-Bermudez v. State, 427 So. 2d 1096, 1097 (Fla. 3d DCA 1983).

### 1. Juror Dowell's Dissent During Polling

Blackman argues that once Juror Dowell dissented from the verdict, the court had no option but to send the jury back with a formal Allen instruction. We disagree.

As an initial matter, this was not the argument raised below in response to Juror Dowell's dissent. After Juror Dowell dissented, counsel for Blackman argued that the jury was not permitted to continue deliberations because the verdict form had been signed.[4] The Defense then moved for mistrial, arguing that any further deliberations would coerce Juror Dowell.

Blackman's argument below is undermined by Florida Rule of Criminal Procedure 3.450, which concerns polling the jury. The rule provides that "[i]f

---

[4] This argument has not been raised on appeal.

13

a juror dissents, the court *must* direct that the jury be sent back for further consideration." (Emphasis added). This is exactly what the trial court did. See State v. Brown, 678 So. 2d 849, 850 (Fla. 3d DCA 1996) ("Because in this case the juror repudiated her verdict prior to being discharged, the trial court was entirely correct in directing the jurors to return to the jury room and continue their deliberations.").

With respect to Blackman's argument on appeal that the trial court was required to give a formal Allen charge at this juncture, though we recognize this challenging situation could potentially give rise to coercion, the trial court is in a better position than this Court to fully evaluate the circumstances. See Evans v. State, 248 So. 3d 155, 160 (Fla. 4th DCA 2018) ("On this record, we must defer to the trial court's superior vantage point at trial, and we hold that the court did not abuse its discretion in denying the motion for mistrial.").

In considering the totality of the circumstances, we agree with the trial court that there was no indication the jury was deadlocked.[5] Instead, it is clear from the record that the jury had actively deliberated for less than four hours before reaching an ostensibly unanimous verdict before polling.

---

[5] To be clear, we do not hold that the jury must explicitly tell the trial court it is "deadlocked." However, to avoid a premature Allen charge, which is itself coercive, there must be some reasonable indication that the jury is at an impasse. See Campbell, 186 So. 3d at 580 (holding that the trial court reversibly erred when it failed to give the standard Allen charge after a juror sent two notes advising the court she could not agree to a verdict).

14

Further, Juror Dowell never stated she had been coerced, and it is unclear whether her dissent during polling was a last-minute recantation or whether she had communicated to the other jurors her disagreement.

As the trial court noted, feelings of frustration and discomfort often arise when making substantial group decisions, but they are not necessarily indicative of a deadlocked jury. Consequently, because the jury had not yet expressed deadlock, we also disagree with Blackman that the trial court's instruction to continue deliberations amounted to a "modified" Allen charge.[6] In this difficult situation, we conclude the court correctly followed Rule 3.450.

**2. The Jury's Note Stating, "[w]e cannot reach a unanimous verdict today."**

Blackman attempts to frame the jury's note at the end of the day on Friday as a statement that it was at an impasse. Blackman further argues that the court's instruction to return on Monday morning for further deliberations was an improper second modified Allen charge.[7] We disagree for the same reason this argument was rejected below. The note did not

---

[6] A modified Allen charge deviates from the standard deadlock instruction. "Florida courts have demonstrated extreme sensitivity to the potential coercive effect of such jury charges . . . ." Palmer v. State, 681 So. 2d 767, 767 (Fla. 5th DCA 1996).

[7] "[T]wo or more consecutive Allen (or modified) charges provide sufficient indicia of coercion, particularly where the jury has repeatedly indicated its division with a sole holdout." Baptiste, 306 So. 3d at 308–09.

15

indicate the jury was deadlocked; it simply stated the jury was finished for the day.  This is even more apparent when read in context with the jury's earlier note informing the court of the jury's desire to leave by 7:30 p.m.

We also observe that in addition to there being no indication the jury was deadlocked, counsel for Blackman never requested an <u>Allen</u> charge during the deliberations on Friday.  Indeed, when the court suggested the possibility of an <u>Allen</u> instruction, Blackman objected on the basis that it would be coercive.

### 3.  Juror Flack's Request to be Excused from Returning

Immediately after the trial court instructed the jury to return on Monday, Juror Flack informed the court she was not feeling well due to extreme stress, and she asked if she had to return on Monday.  The court responded as follows:

> I do understand that a decision of this magnitude can make one anxious. I do need you to come to the courthouse, and if you're feeling so badly that you cannot deliberate, that's something I need to put on the record at that time.  I can't have you not show up. Okay?  Thank you.

Blackman argues this amounted to a third modified <u>Allen</u> charge.  We disagree.  Though Juror Flack expressed anxiety and discomfort at the thought of coming back to deliberate, she never expressed an inability to agree to a verdict.  Juror Flack's concerns and the trial court's response had

nothing to do with a deadlocked jury or a holdout juror. Consequently, it was not error for the court to request that Juror Flack return to fulfill her duty so long as she was able. See Tumblin v. State, 156 So. 3d 5, 6 (Fla. 4th DCA 2014) (holding there was no error when a juror indicated she did not know if she could continue, and the judge did not pressure her but gave her an opportunity to continue).

Blackman further contends that the circumstances in this case are comparable to the coercive circumstances in Thomas; however, the facts in Thomas are far different from those here. In Thomas, "the jury began its deliberations at approximately 7 p.m. Saturday night and did not recess until after 4:30 a.m. the next morning. During the all-night deliberations, the jury expressed its deadlock on several occasions." 748 So. 2d at 974 (footnote omitted). Further, after being informed several times of deadlock, the trial court, at 4:30 a.m., ordered the jurors to report back later that day at 1 p.m. Id. at 975-76.

> [A]t this point, the foreman interrupted and told the court: "The discussions have broken down to open hostility. It's an unpleasant environment. Quite frankly, I don't think we'll ever reach a decision. I'm embarrassed to say that, but it is a fact." Thomas again moved for a mistrial, noticing that several jurors were crying and some had begun to leave the jury box. Finally, the judge adjourned the proceedings and instructed the jury to come back to try again, saying, "If we don't get it done, that will be the effort that we'll have to make to try to resolve this."

Id. at 976. The Florida Supreme Court in Thomas found that several factors combined to create an atmosphere of coercion. Id. at 976-77.

Here, by contrast, the jury did not deliberate all night, but instead for less than four hours until just after 7:00 p.m. on a Friday. And unlike in Thomas, the jury never expressed deadlock, let alone on several occasions. Although Juror Dowell and Juror Flack were at times visibly distressed, they never indicated they could not agree to a verdict, and the trial court judge did not observe any coercion.

### 4. Juror Dowell's Note Requesting a Lesser Sentence

Shortly after the jury returned to deliberate on Monday morning, Juror Dowell sent the following note to the court: "I truly think defendant should have a lesser sentence due to the lack of evidence, no weapon, no fingerprints, just a reliable witness." In response, the court instructed the entire jury that "the sentencing phase of the trial is exclusively for the Court. And that's outside the province of the jury." The court then asked the jury to resume deliberations.

Blackman's final argument is that this amounted to a fourth modified Allen charge. We disagree. Nothing in Juror Dowell's note expresses an inability to reach a decision. We therefore cannot conclude the court's

18

response, which simply clarified the proper role of the jury, was a modified Allen charge or resulted in improper coercion.

### III.     CONCLUSION

On this record, we recognize the difficulty of the situation below. However, based on the totality of the circumstances, we agree with the trial court that the jury never expressed deadlock, and consequently, no Allen charge was necessary. Further, on the record before us, we cannot find that that trial court abused its discretion in denying the motions for mistrial. We therefore affirm.

Affirmed.